UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                                          )
MICHELLE THOMPSON,                                        )
                                                          )
            Plaintiff,                                    )
                                                          )
      v.                                                  )          Civil Action No. 01-0585 (PLF)
                                                          )
ABDUL HAQQ ISLAM, et al.,                                 )
                                                          )
            Defendants.                                   )
———————————————————————— )


OPINION

        This matter is before the Court on defendants' motion for summary judgment.
This action involves an alleged oral employment contract between plaintiff Michelle Thompson
and defendants Abdul Haqq Islam, University Music Group, Inc. ("UMG") and University
Music Entertainment, Inc. ("UME").  Plaintiff brings this action alleging breach of contract,
promissory estoppel, and fraud.  Plaintiff seeks compensatory damages, consequential and
punitive damages, and attorneys' fees and costs.  Upon consideration of the briefs filed by the
parties and the entire record herein, the Court grants defendants' motion for summary judgment.


I.    BACKGROUND

        In June of 1997, defendant Abdul Haqq Islam, president and CEO of UME, hired
plaintiff as his personal assistant.  At the time UME was located in Washington, D.C.  Plaintiff's
duties included general office management and the management of some of Islam's personal
affairs.  Plaintiff's starting annual salary was approximately $20,000, but within six months she

had been awarded more than $9,000 in raises and bonuses.  See Plaintiff's First Amended

Complaint and Jury Demand  ("Am. Compl.") ¶¶ 7-9.

   Plaintiff alleges that on the evening of April 3, 1998, Islam called plaintiff at her

apartment in Maryland to inform her that he and UME were relocating to New York City.

Plaintiff further alleges that Islam asked plaintiff to move to New York City and continue her

duties at a salary of $30,000.  See Am. Compl. ¶ 11.  Plaintiff asserts that as a single parent of a

teenage son, she was reluctant to leave her son and move to New York, but that she eventually

agreed to work for Islam in New York at a salary of  $40,000.  See Defendant's Motion for

Summary Judgment ("Mot. Summ. J."), Ex. 2, Deposition of Michelle Thompson (October 4,

2001) ("Thompson Dep.") at 104:16-21.

   Plaintiff asserts that she told Islam that she needed specific assurances of job

security.  To allay her concerns, plaintiff alleges, Islam described a five-year contract that UMG

had secured with Interscope Records (the "Interscope contract").  See Am. Compl. ¶ 15.  In her

deposition, plaintiff described the duration of the employment agreement that she and Mr. Islam

made at the time as "indefinite."  She also testified that in considering Islam's offer she wanted

additional assurances that he would bring her to another company with him should the

Interscope contract fail.  See Thompson Dep. at 114:12-115:2; 116:1-119:4.  Plaintiff admits,

however, that she never discussed the need for this particular assurance with Islam.  See

Thompson Dep. at 249:8-14; 118:22-119:4.

   Plaintiff broke her lease, placed her son in the care of her mother and moved to

New York City.  See Am. Compl. ¶¶ 19-20.  In New York plaintiff received paychecks from

UMG and was given the title of Executive Assistant to the President/CEO & Product Manager.

As Executive Assistant, Ms. Thompson continued to perform her duties as Islam's personal

assistant and, as Product Manager, assumed additional responsibilities in the management of

artists.  See id. ¶¶ 22-23.  Plaintiff alleges that on March 29, 1999, Islam entered her office and

terminated her without prior warning or justification.  See Am. Compl. ¶ 28.  Plaintiff asserts

that she did not receive her last paycheck or compensation for three weeks of unused vacation.

She collected unemployment compensation from the New York Department of Labor as a result

of her inability to find work.

## II.   DISCUSSION

### A.   Summary Judgment

Summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits or declarations, if any,

demonstrate that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Material facts are those that

"might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  When considering a summary judgment motion, "the evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865

F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition must consist of more than mere unsupported

allegations or denials and must be supported by affidavits or other competent evidence setting

forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); Celotex

Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide

evidence that would permit a reasonable jury to find" in its favor.  Laningham v. United States

Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### B.   Resolution of Plaintiff's Conflicting Statements

As a preliminary matter, the Court must address the conflicting positions about the duration of the alleged employment contract taken by plaintiff in her deposition and in an affidavit submitted in support of plaintiff's opposition to defendants' motion for summary judgment.  With her opposition brief, plaintiff submitted an affidavit in which she stated that her employment was guaranteed for the length of the Interscope contract and that in the event that agreement prematurely ended, Islam would employ her at another company.  See Certification of Michelle Thompson, Ex. to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (February 7, 2002) ("Thompson Affid.") ¶¶ 7-8.  Plaintiff's prior testimony with respect to the duration of the Interscope contract conflicts with this statement, however.  At her deposition, plaintiff alternately described the contract duration as indefinite and as lasting five years.  Compare Thompson Dep. at 113:2-117:5 (describing both five-year term of employment and indefinite term) and 249:4-18 (retracting five-year term).  See also Mot. Summ. J., Ex. 6, Plaintiff's Amended Answers to Interrogatories at 10 (describing duration of employment as "an indefinite period of time").  In another document, plaintiff represented that her employment was year-to-year.  See Mot. Summ. J., Ex. 5, Letter from A.J. Borrelli, counsel for plaintiff, to Carla Mathers, counsel for defendant (September 27, 2001) at 2 (refuting assertion that contract was

4

for five years and asserting rather that agreement was to persist "year-to-year for the length of

the Interscope agreement").   Plaintiff also has made inconsistent statements regarding the

terminability of her employment and whether Islam offered her any guarantee of employment.

Compare Thompson Dep. at 118:19-120:13 (discussing unconfirmed employment guarantee)

and 130:1-8 (asserting that parties never discussed termination) with Thompson Affid. ¶ 8

(asserting that Islam provided an employment guarantee).  See also Am. Compl. ¶ 16 (stating

that contract assured a "starting salary of $40,000 for at least the length of the five year contract

with Interscope").

        Plaintiff cannot create or resurrect a genuine issue of material fact and thereby

defeat summary judgment by filing a self-serving affidavit that contradicts previous sworn

testimony.  A party may not create a material issue of fact simply by contradicting prior sworn

testimony with a later-filed affidavit.  Pyramid Secs. Ltd. v. IB Resolution, Inc., 924 F.2d 1114,

1123 (D.C. Cir. 1991).  "The objectives of summary judgment would be seriously impaired if the

district court were not free to disregard" such an affidavit.  Martin v. Merrell Dow Pharm., Inc.,

851 F.2d 703, 706 (3d Cir. 1988)); see also Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309,

315 (6th Cir. 1989); Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.

1969); Reetz v. Jackson, 176 F.R.D. 412, 414 (D.D.C. 1997).  "[A] party's affidavit which

contradicts [her] own prior deposition testimony should be disregarded on a motion for summary

judgment." Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); see also Franks v. Nimmo,

796 F.2d 1230, 1237 (10th Cir. 1986); Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp.

641, 669 (D.D.C. 1997).

        In such circumstances, "the prior sworn statement will receive controlling weight

unless the shifting party can offer persuasive reasons for believing the supposed correction."  See

5

Pyramid Secs. Ltd. v. IB Resolution. Inc., 924 F.2d at 1123.  Where a party emphatically and wittingly swears to a fact, it bears a heavy burden – even in the summary judgment context – when it seeks to jettison its prior sworn statement.  Plaintiff provides no explanation for her contradictory statements.  In considering defendants' motion for summary judgment, the Court therefore will disregard the parts of plaintiffs' affidavit that are inconsistent with her prior sworn testimony.  See Mack v. United States, 814 F.2d at 124; Reetz v. Jackson, 176 F.R.D. at 415.

### C.  Breach of Contract

#### 1.  Applicable State Law

The parties disagree as to which state's law the Court should apply in considering each of plaintiff's claims.  In a diversity action, a federal district court applies the choice of law principles of the state or jurisdiction in which it sits.  See Rafferty v. NYNEX Corp., 60 F.3d 844, 849-50 (D.C. Cir. 1995) (citing Bledsoe v. Crowley, 849 F.2d 639, 641 (D.C. Cir. 1988)); Long v. Sears Roebuck & Co., 877 F. Supp. 8 (D.D.C. 1995).  Under District of Colubmia conflict of laws principles, the Court must conduct the choice of law analysis for each claim being adjudicated.  See In re Air Crash Disaster at Washington, D.C., 559 F. Supp. 333, 341 (D.D.C. 1983).  The District of Columbia employs a modified "governmental interest analysis," under which the court evaluates the governmental policies underlying the applicable laws and determines which jurisdiction's policy would be most advanced by having its laws applied to the facts in the case.  See Rafferty v. NYNEX Corp., 60 F.3d at 849-50.

In conducting a governmental interests analysis, District of Columbia courts look to the Restatement (Second) of Conflict of Laws to identify the jurisdiction with the "most significant relationship" to each issue in dispute.  See Hercules & Co., Ltd. v. Shama Restaurant

Corp., 566 A.2d 31, 40 (D.C. 1989). The jurisdiction with the most significant relationship

usually will be the state whose policy would be most advanced by the application of its law. See

In re Air Crash Disaster at Washington, D.C., 559 F. Supp. at 342. To determine which state has

the most significant relationship to the dispute, the Court examines a list of contacts that the

states might have with the litigation.

Prior to engaging in a conflict of laws analysis, however, the Court must

determine whether there is a genuine conflict between the laws of the involved jurisdictions or

whether there is a "false conflict." See Eli Lilly & Co. v. Home Ins. Co., 764 F.2d 876, 882

(D.C. Cir. 1985). A false conflict exists where either (1) the laws of the interested states are the

same; (2) those laws, though different, produce the same results when applied to the facts at

issue; or (3) the policies of one state would be advanced by the application of its law and the

policies of the state whose laws are claimed to be in conflict would not be advanced by the

application of that state's law. See Steele v. Isikoff, 130 F. Supp.2d 23, 30 & n.3 (D.D.C. 2000);

Long v. Sears Roebuck & Co., 877 F. Supp. at 11. When confronted with a false conflict, the

court applies the law of the state whose policy would be advanced by the application of its law or

the forum law. See Biscoe v. Arlington County, 738 F.2d 1352, 1360 (D.C. Cir. 1984); Greaves

v. State Farm Ins. Co., 984 F. Supp. 12, 14 (D.D.C. 1997); In re Air Crash Disaster at

Washington, D.C., 559 F. Supp. at 343 & n.10.

For breach of employment contract claims, District of Columbia courts apply the

law of the state in which the alleged contract was breached because that state has the greatest

interest in protecting the rights of its employees. See Rafferty v. NYNEX Corp., 60 F.3d at 850;

Hyman v. First Union Corp., 982 F. Supp. 8, 11 (D.D.C. 1997). Plaintiff argues that District of

Columbia law should apply to this claim, while defendants contend that New York law should

apply.  With respect to the breach of contract claim, the Court finds that New York law applies

because although the contract was entered in D.C. or Maryland, the alleged breach took place in

New York.  See Am. Compl. ¶ 11.  Furthermore, plaintiff's allegations relate directly to the

employment practices of a company conducting business in New York, and that state has a

strong interest in enforcing employment relationships and determining the rights of its employers

and employees.  Consequently, New York's policies would be furthered by application of that

state's law, and the Court will apply New York law.

### 2.   Substantive Analysis of Breach of Contract Claim

Under New York law, employment is presumed to be at-will unless the plaintiff

can show (a) an express limitation on the employer's right of termination, or (b) an agreement

that the parties established a contract for a fixed duration.  See Sabetay v. Sterling Drug, Inc.,

506 N.E.2d 919, 920 (N.Y. 1987); Murphy v. American Home Prods. Corp., 448 N.E.2d 86, 89

(N.Y. 1983); see also Rooney v. Tyson, 697 N.E.2d 571, 574 (N.Y. 1998) (when agreement is

silent as to duration, it is presumptively at-will).[1]  New York courts have found terms such as

"permanent," "to continue indefinitely and will follow [the employee] in each succeeding year,"

and "yearly employment [for a specified salary]" too indefinite to rebut the presumption of at-

will employment.  See Rooney v. Tyson, 697 N.E.2d at 573; Dalton v. United Bank of

Switzerland, 134 A.D.2d 174, 176 (N.Y. App. Div. 1987) (finding that defendant's promise of an

annual compensation rate did not obligate defendant to employ plaintiff for that year or for any

other period).  In an at-will employment relationship, either party may terminate the employment

---

[1]      This also holds true under District of Columbia law.  See Hyman v. First Union Corp.,
982 F. Supp. at 12 (citing Choate v. TRW, Inc., 14 F.3d 74, 76 (D.C. Cir. 1994)); Sullivan v.
Heritage Found., 399 A.2d 856 (D.C. 1979).

at any time for any reason or for no reason.  See Murphy v. American Home Prods. Corp., 448 N.E.2d at 89.

Plaintiff argues that her employment was not at-will because Islam specifically agreed to limit his right of termination.  Specifically, plaintiff contends that Islam agreed to three such limitations: (1) plaintiff could only be fired for cause (plaintiff asserts that Islam so admitted during his deposition); (2) UMG would employ plaintiff so long as its agreement with Interscope was in effect; and (3) in any event, plaintiff would be employed permanently by one of Islam's various business entities.  The record, however, does not support plaintiff's contentions.  First, Islam did not testify that plaintiff could not be terminated except for cause, and plaintiff testified in her own deposition that "Mr. Islam and I never talked about me being terminated. . . .  We never spoke about termination as far as I was concerned."  Thompson Dep. at 130:4-8.

Second, plaintiff cannot demonstrate that Islam agreed that he would employ her for as long as the Interscope contract was in effect.  In her deposition, plaintiff maintained that her employment was not for the duration of the Interscope contract and that the parties never discussed a term of years.  See Thompson Dep. at 114:12-115:2 ( "Mr. Islam and I did not discuss a length of time.").  Furthermore, plaintiff explained that she and Islam discussed the Interscope contract only in the context of identifying a source of income to guarantee timely payment of her salary.  See id. at 116:14-17.  Finally, the record does not suggest that Islam assured plaintiff that she would be permanently employed by one of his business entities.  Rather, plaintiff has stated only that she believed, but did not discuss with Islam or obtain his

agreement, that if the Interscope contract failed Islam would employ her at another company.[2]

Based on this record evidence, plaintiff has not created any genuine dispute of material fact on

which a reasonable jury could find that Islam agreed to limit his right of termination.

      Plaintiff also argues that the parties agreed to an employment contract of a fixed

duration, thereby defeating the presumption of an at-will contract.  At various points in her

deposition plaintiff described the duration of the agreement either as five years, see Thompson

Dep. at 105:14-15, or as indefinite.  See id. at 116:1-11.  Elsewhere in her deposition, however,

plaintiff stated that the parties "did not discuss a length of time" she would be employed.

Thompson Dep. at 113:7-8; 249:4-18; 114:12-13; 120:1-13 ("There was no time limit set on how

long I would work for University.").   On the basis of such contradictory testimony, plaintiff

cannot defeat the presumption of at-will employment.  Rooney v. Tyson, 697 N.E.2d at 573-74.

An at-will employee may be discharged at any time, and plaintiff's claim for breach of the

---

[2]     Plaintiff's deposition transcript reads, in relevant part:

> Q: What would happen if the Interscope contract ended, at the termination of the Interscope Contract?
> . . .
> A: If Mr. Islam started another company, then I would work with him at the other company.
> Q: And you never discussed that with him?
> A: No, ma'am.

Thompson Dep. at 120:1-13.

> Q: In your mind, what would have happened if the Interscope contract fell through?
> A: If Mr. Islam started another company, then I would work with him at his other company.
> Q: Did you discuss that with him?
> A: No.

Thompson Dep. at 118:22-119:4.

employment agreement therefore fails.  Accordingly, the Court will grant defendants' motion for

summary judgment with respect to plaintiff's breach of contract claim.[3]

### D.   Promissory Estoppel

#### 1.   Applicable State Law

With respect to plaintiff's claim of promissory estoppel, the parties present

opposing arguments for the application of New York or District of Columbia law.  The Court

concludes, however, that an analysis of the law of Maryland, where many of the events giving

rise to this claim occurred and where the plaintiff resided during the relevant time period, is

appropriate as well.  In any event, New York, the District of Columbia and Maryland share a

similar standard for promissory estoppel, which requires evidence of a promise, reasonable and

foreseeable reliance on the promise, and injury sustained as a result of reliance on the promise.

See Oscar Prods., Inc. v. Zacharius, 893 F. Supp. 250, 257 (S.D.N.Y. 1995); Smiard v.

Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994); Bender v. Design Store Corp., 404 A.2d

194, 196 (D.C. 1979); Pavel Enters., Inc. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md. 1996);

Ripple's of Clearview, Inc. v. Le Harve Assocs., 88 A.D.2d 120, 123 (N.Y. App. Div. 1982).[4]

---

[3]    Even if the agreement had been of a specific duration and therefore not governed by the doctrine of at-will employment, plaintiff's claim would be barred by New York's statute of frauds, which requires a contract that "by its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" be memorialized in writing.  See N.Y. GEN. OBLIG. §5-701; see also D.C. CODE ANN. §28-3502 (same).  Plaintiff claims that the length of the contract was five years or more.  See Thompson Dep. at 113:13-114:19; 116:3-118:5.  Because the alleged agreement was never reduced to writing, it is unenforceable.  See Thompson Dep. at 102:5-22; Mot. Summ. J., Ex. 8, Deposition of Abdul Haqq Islam at 119:19-22.

[4]    Maryland and New York courts also have held that reliance when based upon an offer for employment at-will is unreasonable.  See McNierney v. McGraw-Hill, Inc., 919 F. Supp. 853, 861 (D. Md. 1995); Arias v. Women In Need, Inc., 274 A.D.2d 353, 354 (N.Y. App. Div 2000);

The facts underlying the promissory estoppel claim show that of the jurisdictions whose law might apply, Maryland has the strongest interest in ensuring that promises made to its citizens and inducing its citizens to move from the state are upheld. At the time the alleged promise was made, plaintiff resided in Maryland, and plaintiff received the alleged promise while at home in Maryland. Furthermore, most of the actions taken by plaintiff in reliance on the alleged promise – breaking her lease, moving from the apartment where she had resided for thirteen years, and leaving her son and mother – occurred in Maryland. While it is true that plaintiff moved to New York and entered a lease and employment in the state and that several defendants are located in New York, the receipt of the promise, the formation of expectations, and the initial reliance occurred in Maryland, and the injuries alleged to have resulted from the reliance were sustained, at least in part, in Maryland by a Maryland resident. These contacts, together with the state's interest in protecting its citizens from false promises of employment, justify the application of Maryland law.

2.    Substantive Analysis of Promissory Estoppel Claim

Plaintiff charges that Islam promised her that if she moved to New York, she would be employed at a yearly salary of $40,000 for as long as the Interscope contract was in effect. See Am. Compl. ¶ 48. Plaintiff alleges that Islam made this promise with the expectation that plaintiff would rely on it, and that she did reasonably rely on this promise and as a result suffered injury. See id. ¶¶ 50-51. On a claim of promissory estoppel, Maryland courts follow the four-part test articulated in the Restatement (Second) of Contracts §90(1) (1979), which requires:

———————————————————

Tannehill v. Stuart, 226 A.D.2d 117, 118 (N.Y. App. Div. 1996).

> (1) a clear and definite promise;
>
> (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
>
> (3) which does induce actual and reasonable action or forbearance by the promisee; and
>
> (4) causes a detriment which can only be avoided by the enforcement of the promise.

Pavel Enters., Inc. v. A.S. Johnson Co., 674 A.2d at 532.

Plaintiff fails to satisfy the first element of the test, because she has not demonstrated that the promise she seeks to enforce here – that defendants would employ plaintiff for the duration of the Interscope contract – was clear and definite.  While it is undisputed that Islam offered plaintiff employment, plaintiff is unable to specify the duration of the proposed employment, and even maintained at one point in her deposition that the parties never discussed its duration.  See Thompson Dep. at 113:7-8; 249:4-18; 114:12-13.  Because there is insufficient evidence to demonstrate a clear promise for employment of the specified duration of the Interscope contract, the Court will grant defendants' motion for summary judgment on the promissory estoppel claim.

### E.   Fraud

#### 1.   Applicable State Law

The parties disagree with respect to which state's law should govern plaintiff's fraud claim.  Upon consideration of the various states' laws, the Court concludes that no true conflict exists.  Each jurisdiction – D.C., Maryland and New York – requires that a claim for fraud allege the following elements: (1) a false representation, (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, (5) an action that is

taken in reliance upon the representation, and (6) reasonable reliance by the defrauded party.

See Hercules v. Shama Restaurant Corp., 613 A.2d 916, 923 (D.C. 1992); Bennett v. Kiggins,

377 A.2d 57, 59  (D.C. 1977); Martens Chevrolet, Inc. v. Seney, 439 A.2d 534, 537 (Md. 1982);

Otto Roth & Co. v. Gourmet Pasta, Inc., 277 A.D.2d 293, 294-95 (N.Y. App. Div. 2000).  Each

jurisdiction also requires that the plaintiff allege fraud with particularity – that is, particular facts

from which fraud can be inferred; mere conclusory allegations are insufficient.  See Bennett v.

Kiggins, 388 A.2d at 59; Brack v. Evans, 187 A.2d 880, 883 (Md. 1963); In re D'Agostino, 284

A.D.2d 857, 861 (N.Y. App. Div. 2001); Kwang Dong Pharm. Co. v. Myun Ki Han, 205 F.

Supp.2d 489, 495 (D.Md. 2002).  Furthermore, absent a showing of an extra-contractual duty, all

three jurisdictions bar a fraud claim that stems merely from the failure to perform a contract.

See Kwang Dong Pharm. Co. v. Han, 205 F. Supp.2d at 495; Regency Communications v.

Cleartel Communications, Inc., 160 F. Supp.2d 36, 41-42 (D.D.C. 2001); Sims v. Ryland Group,

Inc., 378 A.2d 1, 3 (Md. 1977); New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318-19

(N.Y. 1995); Arias v. Women in Need, Inc., 274 A.D.2d at 354.  The Court therefore turns to the

states' competing interests.

The Restatement (Second) of Conflict of Laws suggests that a court deciding

which state's law governs a fraud claim consider the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon
> the defendant's representations;
>
> (b) the place where the plaintiff received the representations;
>
> (c) the place where the defendant made the representations;
>
> (d) the domicil, residence, nationality, place of incorporation and
> place of business of the parties;

       (e) the place where a tangible thing which is the subject of the
transaction between the parties was situated at the time; and

       (f) the place where the plaintiff is to render performance under a
contract which he has been induced to enter by the false
representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) (1971).

       The Court concludes that Maryland has the greatest interest in protecting its

citizens from fraudulent representations targeted at them.  Furthermore, Maryland has substantial

contacts with the fraud claim.  Plaintiff received the representations in Maryland and acted upon

them in that state; it was in Maryland where plaintiff discussed contract terms with Islam and

decided to leave the state, allegedly at great personal cost.  Although several factors in the

analysis weigh towards New York because plaintiff was to render performance in that state and

she ultimately moved there, plaintiff made the critical decision to rely on Islam's representations

in Maryland.  These ties to Maryland, in combination with Maryland's policy interest in

deterring fraud targeted at its citizens, justify the application of Maryland law.

### 2.  Substantive Analysis of Fraud Claim

       Plaintiff's fraud claim alleges that Islam provided false assurances of plaintiff's

continued employment and receipt of benefits, and that his representations with respect to the

length, terms and conditions of plaintiff's employment were false.  See Am. Compl. ¶¶ 53-54.

Plaintiff alleges that Islam made these representations with the intent to induce plaintiff to move

to New York, which she then did to her detriment.  See id. ¶¶ 56-58.

       Upon analysis, it is apparent that plaintiff's fraud claim merely restates her claim

for breach of contract.  "Failure to perform a contract does not convert a breach of contract into

fraud."  Kwang Dong Pharm. Co. v. Han,  205 F. Supp.2d at 495.  Fraud must be pled with

particularity.  <u>See</u> <u>id</u>. (citing F<small>ED</small>.R. C<small>IV</small>.P. 9(b)).  In this case, plaintiff repeatedly describes the

representations as "false," but without any facts or evidence to support that proposition, the

claim is simply a restatement of plaintiff's breach of contract claim.  In short, plaintiff's

allegations do not give rise to a separate cause of action for fraud.  The Court therefore will grant

summary judgment on the fraud claim as well.

III.   CONCLUSION

For the reasons stated in this Opinion, defendants have demonstrated that there

are no genuine issues of material fact with respect to any of plaintiff's claims, and that

defendants are entitled to judgment as a matter of law.  Accordingly, the Court will grant

defendants' motion for summary judgment and enter judgment in favor of defendants.

An Order and Judgment consistent with this Opinion shall issue this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 29, 2005

16